UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ALVIN LEROY BALDWIN, | ) | Case No. 06-40675-399 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| ALVIN LEROY BALDWIN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| CREDIT BASED ASSET SERVICING AND SECURITIZATION, | ) ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)(4), APPLICABLE HEREIN PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9024**

The issue before this Court is relatively simple: was due process afforded to Debtor Alvin Leroy Baldwin ("Debtor") in conjunction with this Court's dismissal of his Chapter 13 bankruptcy case? The procedural context in which this issue has arisen is anything but simple, however, and requires some discussion.

**Procedural Background**

On February 23, 2006, the Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. At the time of the bankruptcy filing, Credit Based Asset Servicing and Securitization ("Creditor") had a foreclosure sale scheduled on the Debtor's primary residence for March 2, 2006. The Creditor received notice of the Debtor's bankruptcy filing on February 27, 2006. The Creditor continued the foreclosure sale to

March 9, 2006.[1] On March 3, 2006, the Creditor filed two motions with this Court: one sought alternatively dismissal of the case or relief from the automatic stay to proceed with the foreclosure sale; the other sought an expedited hearing on the dismissal or relief from the automatic stay prior to the March 9, 2006, continued foreclosure sale. This Court conducted a hearing on the motions at 9:00 a.m. on March 9, 2006, and granted the request for expedited hearing and dismissed the Debtor's case.

At 2:21 p.m. on March 9, 2006, the Debtor filed a document entitled Debtor's Motion Agstin [sic] Motion for Expedited Hearing which this Court denied as moot.

On March 23, 2006, the Debtor filed Debtor's Motion Requesting Dismissal By [sic] Reversed and Chapter 13 Bankruptcy Reinsated and the that [sic] Sale by [sic] Voided and Debtor's Response to Movant's Motion (the "Motion"). This Court deemed the Motion to be a request for a new trial pursuant to Federal Rule of Civil Procedure 59, applicable in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9023, and denied the Motion as untimely because it was filed more than ten days after the date of dismissal of the case.

The Debtor appealed the dismissal of this case. The Eighth Circuit Court of Appeals held that this Court erred in treating the Motion as a request for relief under Rule 59. *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734 (8th Cir. 2008). The Eighth Circuit Court of Appeals ruled that this Court should have instead treated the Motion as a request for relief from judgment under Federal Rule of Civil Procedure 60, applicable

---

[1] Missouri law allows a creditor to continue a foreclosure sale for one week without the consent of the debtor and without needing to re-notice the sale. MO. REV. STAT. § 443.355.

2

in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 9024, alleging that the Dismissal Order is void because the notice the Debtor received of the March 9, 2006, hearing on the Creditor's motion to dismiss was constitutionally defective. The Eighth Circuit Court of Appeals determined that the factual record before it was inadequate to determine whether notice to the Debtor of the March 9, 2006, hearing violated the Debtor's due process rights and remanded the matter to this Court to make a such a determination.

In accordance with the directive of the Eighth Circuit Court of Appeals, this Court scheduled a hearing to establish a record of the facts surrounding the notice given to the Debtor of the March 9, 2006, hearing. Such hearing was held on May 13, 2008.[2] Present at the hearing were the Debtor, appearing *pro se*, and the Creditor, appearing through counsel. The parties presented evidence. At the conclusion of the hearing, this Court took the matter under advisement. This opinion constitutes this Court's findings of fact and conclusions of law regarding the Motion as required by Federal Rule of Civil Procedure 52, applicable in this contested matter pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

## Admissibility of Certain Exhibits

At trial the Debtor offered several exhibits. The Court took the admissibility of certain exhibits under advisement. After careful reflection, the Court hereby admits all exhibits offered by the Debtor at trial.

## Factual Background

---

[2] This Court granted each party a continuance to accommodate their schedules. The May 13, 2008 hearing date accommodated the schedules of both parties.

The Debtor is a single man who has lived with Caren Vinson since 1994. Neither the Debtor nor Ms. Vinson are strangers to the bankruptcy system. During the time they have lived together, Ms. Vinson has filed thirteen Chapter 13 bankruptcy petitions and the Debtor has filed eight Chapter 13 bankruptcy petitions. A list of the cases filed by each follows:

| CAREN VINSON CHAPTER 13 BANKRUPTCY CASE FILING HISTORY ||||
|---|---|---|---|
| Case Number | Debtor Name | Date Filed | Date Dismissed |
| 96-43919 | Caren R. Vinson | 05/13/1996 | 12/06/1996 |
| 96-49804 | Caren R. Vinson | 11/20/1996 | 03/24/1997 |
| 97-43060 | Caren Vinson | 04/01/1997 | 05/23/1997 |
| 97-44406 | Caren Vinson | 05/07/1997 | 08/20/1997 |
| 97-49236 | Caren R. Vinson | 09/24/1997 | 12/07/1998 |
| 98-53194 | Caren Ruth Vinson | 12/01/1998 | 03/06/2000 |
| 00-47294 | Caren R. Vinson | 07/26/2000 | 02/27/2001 |
| 00-40547 | Caren Ruth Vinson | 01/20/2000 | 08/17/2000 |
| 01-41130 | Caren R. Vinson | 02/05/2001 | 01/28/2002 |
| 01-54076 | Caren Ruth Vinson | 12/20/2001 | 03/25/2002 |
| 02-48321 | Caren Ruth Vinson | 07/26/2002 | 05/21/2003 |
| 03-48689 | Caren R. Vinson | 06/30/2003 | 09/05/2003 |
| 03-50595 | Caren R. Vinson | 08/11/2003 | 06/04/2004 |

4

| ALVIN BALDWIN CHAPTER 13 BANKRUPTCY CASE FILING HISTORY | | | |
|---|---|---|---|
| Case Number | Debtor Name | Date Filed | Date Dismissed |
| 96-40684 | Alvin Leroy Baldwin | 01/30/1996 | 04/01/1996 |
| 96-44486 | Alvin L. Baldwin | 06/03/1996 | 08/27/1996 |
| 96-49454 | Alvin L. Baldwin | 11/08/1996 | 01/31/1997 |
| 98-42113 | Alvin Baldwin | 02/26/1998 | 05/12/1998 |
| 03-40121 | Alvin L. Baldwin | 01/06/2003 | 03/10/2003 |
| 03-43669 | Alvin L. Baldwin | 03/21/2003 | 05/21/2003 |
| 05-43712 | Alvin Leroy Baldwin | 03/24/2005 | 05/19/2005 |
| 06-40675 | Alvin Leroy Baldwin | 02/23/2006 | 03/09/2006 |

None of the Chapter 13 bankruptcy cases filed by Ms. Vinson nor the Debtor were completed. The Debtor did not confirm a plan in any of his eight Chapter 13 cases. Ms. Vinson confirmed a plan in only four of her thirteen Chapter 13 cases but failed to complete payments to creditors under each of the four confirmed plans.

Likewise, neither the Debtor nor Ms. Vinson is a stranger to expedited motions in bankruptcy. In both Caren Vinson's Case Number 03-48689 and Case Number 03-50595, the Debtor was listed as a co-debtor in emergency motions for relief from the automatic stay filed by creditors Lee O. Smith and Linda H. Smith. Case Number 03-48689 was filed on June 30, 2003, on the eve of a foreclosure sale scheduled for July 1, 2003. Case Number 03-50595 was filed on August 11, 2003, on the eve of a foreclosure sale scheduled for August 12, 2003. In each instance, the creditors filed emergency motions which sought relief including relief from the co-debtor stay with respect to the Debtor. At the time he filed the petition initiating this case, the Debtor

5

was familiar with emergency and expedited matters in the bankruptcy context – especially when a case is filed shortly before a scheduled foreclosure sale.

### Debtor's Residence

The Debtor purchased a home located at 3 Riverbend Court in St. Peters, Missouri on May 20, 2002 ("Riverbend Property"). The Debtor financed the purchase of the home and granted a deed of trust to secure the payment of the purchase price. The Creditor was the holder of the note and deed of trust encumbering the Riverbend Property at the time the Debtor commenced this bankruptcy case. This case is the Debtor's fourth bankruptcy case filed after he purchased the home.

On July 14, 2004, the Debtor executed a quit claim deed transferring his interest in the Riverbend Property to Phyllis Barry, his friend. The quit claim deed was recorded with the St. Charles County Recorder of Deeds on September 17, 2004. The Debtor remains personally liable on the mortgage debt and continued to reside in the Riverbend Property until March of 2008. He still has personal property located at the Riverbend Property.

### Debtor's Eighth Bankruptcy Filing

The Debtor is an over the road truck driver. During February and the relevant portion of March, 2006, the Debtor was not at the Riverbend Property. Instead he was on the road. Ms. Vinson resided at the Riverbend Property during that time period and spoke with the Debtor on a daily basis.

Ms. Vinson informed the Debtor of the foreclosure sale scheduled by the Creditor for March 2, 2006. She filled out a bankruptcy petition, schedules, and statements for the Debtor, signed them in the Debtor's name, and filed them with this Court on

February 23, 2006.  The Debtor did not see nor sign the bankruptcy petition, schedules, or statements filed to initiate this case.  Neither the bankruptcy petition nor any other documents indicate that they were signed by anyone other than the Debtor or that they were signed on behalf of the Debtor by someone with legal authority to do so.  The Debtor testified that Ms. Vinson signed his name and filed the petition with his permission.

In the schedules, the Debtor lists himself as the legal owner of the Riverbend Property and states that he transferred no property within two years immediately preceding the commencement of this case. [Debtor's Schedule A; Debtor's Statement of Financial Affairs, Question 10.a.] The Debtor thus made no disclosure with respect to the July 14, 2004, transfer of the Riverbend Property to his friend, Phyllis Barry.

The Creditor learned of the bankruptcy filing prior to the March 2, 2006, foreclosure sale and continued the sale for one week to March 9, 2006, as allowed by Missouri law.  MO. REV. STAT. § 443.355.

### The Creditor's Motions and Service Thereof

On March 3, 2006, the Creditor filed a motion to dismiss the Debtor's case or in the alternative for relief from the automatic stay to proceed with the foreclosure sale with respect to the Riverbend Property.  The Creditor also filed a motion requesting an expedited hearing on or before the continued foreclosure sale date of March 9, 2006.  The Creditor noticed the hearing on each motion for March 9, 2006, at 9:00 a.m.  At 5:45 p.m. on March 3, 2006, Karla Will, an employee of the Creditor's law firm, placed an envelope addressed to the Debtor at the Riverbend Property address in a mailbox at

7

the Chesterfield, Missouri post office.[3] The envelope contained a copy of the motions and the notice of expedited hearing.

The Creditor also hired Rhonda Cidlik Investigator to serve a copy of the motions and notice on the Debtor at the Riverbend Property. Rhonda Cidlik signed an affidavit indicating that she served a copy of the motions and notice on Alvin Baldwin at 2:19p.m. on March 7, 2006. Ms. Cidlik testified that she delivered the documents to a person she believed to be the Debtor at the Riverbend Property. Ms. Cidlik serves up to twenty people in any given day and has no personal recollection of the person to whom she delivered the documents over two years ago. The Debtor was not at the Riverbend Property on March 7, 2006; therefore Ms. Cidlik could not have served the documents on the Debtor. This Court observed the demeanor of Ms. Cidlik while she testified and finds her to be a credible person. This Court finds that Ms. Cidlik served the motions and the notice on someone other than the Debtor at the Riverbend Property on March 7, 2006.

The Debtor claims that he did not receive the mailed motions or the notice until 10:45 a.m. on March 9, 2006. The Debtor made this representation at the hearing on this matter. However, the Debtor testified that he was not at home on March 9, 2006, nor during any of the time period relevant to this matter. The Debtor did not call any other witness to testify regarding this matter. By the Debtor's own testimony he was not

---

[3] Chesterfield, Missouri, is a suburb of St. Louis, Missouri, and is located in St. Louis County, Missouri. The Riverbend Property is located in St. Peters, Missouri, a suburb of St. Louis, Missouri, located in St. Charles County, Missouri. St. Louis County and St. Charles County are adjacent. Both are considered part of the Greater St. Louis Metropolitan Area.

at the Riverbend Property on March 9, 2006. Therefore, his statement that the motions and notice were received at 10:45 a.m. on March 9, 2006, is hearsay, without foundation, and lacks credibility.

The only credible evidence of service with respect to the motions and notice is that they were mailed to the Debtor at the Riverbend Property on March 3, 2006, by placing them in a mailbox at 5:45 p.m. at the Chesterfield, Missouri post office and that personal service on the Debtor at the Riverbend Property via Rhonda Cidlik was attempted on March 7, 2006, when Ms. Cidlik delivered the motions and notice to someone at the Riverbend Property.

### The March 9, 2006, Hearing

This Court conducted a hearing on the emergency motions on March 9, 2006, at 9:00 a.m. The Creditor appeared through counsel. The Debtor failed to appear. The Court granted the motion for expedited hearing and dismissed the case. The Debtor's appeal ensued, resulting in the remand.

### CONCLUSIONS OF LAW

The Court makes the following conclusion of law.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Due Process

The sole issue for this Court to decide is whether the Debtor's due process rights were violated when this Court entered its order dismissing this case. The Fifth Amendment to the United States Constitution prohibits the deprivation of property without due process of law. U.S. CONST. amend. V. At a minimum, the deprivation of

property by adjudication must be preceded by notice and an opportunity for hearing **appropriate to the case**. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Personal service of written notice within the jurisdiction is the classic form of notice and is always adequate in any type of proceeding. *Id.* Such service is not always possible, however.

Due process should not be construed to impose impossible or impractical obstacles. *Id.* at 313-14. Notice should be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of an action and afford such parties an opportunity to present objections. *Id.* at 314. The notice must reasonably convey the required information and must provide a reasonable time for interested parties to make their appearances. *Id.* Nonetheless due regard must be given for the practicalities and peculiarities of the case. *Id.*

The means of notice must be of a type that one desirous of actually informing the other party might reasonably adopt to accomplish notice. *Id.* at 315. The notice must be reasonably certain to inform those affected or, where conditions do not reasonably permit such notice, the form chosen must be not substantially less likely to bring home notice than other of the feasible and customary substitutes. *Id.*

The United States Supreme Court has recognized that actual notice is not always an option. In such a situation, the "employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Id.* at 317.

**Notice of Motions for Relief from Automatic Stay and for Dismissal**

Notice in the bankruptcy context is governed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Where the Code and Rules specify required notice in a given circumstance, due process generally entitles a party to receive the notice specified therein. *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d at 737; *Ruehle v. Educ. Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679, 684 (6th Cir. 2005); *In re Hanson*, 397 F.3d 482, 487 (7th Cir. 2005); *Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 302 (4th Cir. 2002).

This Court hears requests for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code and requests for dismissal of cases pursuant to Section 1307 of the Bankruptcy Code. 11 U.S.C. §§ 362 and 1307. Relief from the automatic stay and/or dismissal may be ordered only after notice and a hearing. 11 U.S.C. §§ 362(d) and 1307(c). A motion for relief from the automatic stay shall be made in accordance with Federal Rule of Bankruptcy Procedure 9014. Fed. R. Bankr. P. 4001(a). Dismissal may be ordered only after a hearing on notice to the debtor. Fed. R. Banrk P. 1017(e). Federal Rule of Bankruptcy Procedure 9014 also governs motions to dismiss. Fed. R. Bankr. P. 1017(f).

Federal Rule of Bankruptcy Procedure 9014(a) requires "reasonable notice and opportunity for hearing" to be afforded to the party against whom relief is sought. A motion requesting relief which is governed by Federal Rule of Bankruptcy Procedure 9014 shall be served in the manner provided for service of a summons and complaint under Federal Rule of Bankruptcy Procedure 7004. Fed. R. Bank. P. 9014(b). Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9), service may be made

11

upon a debtor by mail addressed to the debtor at the address shown in the bankruptcy petition or such other address as the debtor designated in a writing filed with the Court. Thus service by mail generally satisfies a debtor's due process rights.

This Court hears motions for relief from the automatic stay on an emergency or expedited basis where cause exists to do so. E.D.Mo.L.B.R. 4003-1.H. and 9013-2.C. When a matter is heard on an expedited or emergency basis, the motion and notice of hearing must be served as expeditiously as possible upon opposing counsel or upon the opposing party if not represented by counsel. E.D.Mo.L.B.R.9060-1.C. The local rule provides <u>as examples</u> of expeditious service personal service or service by electronic means. *Id.* These examples are exactly that – examples of forms of service which are expeditious. They are not an exclusive list.

When a debtor is represented by counsel, the filing of a motion automatically triggers an electronic notice to the debtor's counsel (who is registered with the Court's electronic filing system). Debtor's counsel also provides a phone number and sometimes a fax number in pleadings, making it simple for a creditor to contact the debtor's counsel. Expedited notice to the debtor through counsel is thus facilitated. When a debtor files a bankruptcy petition *pro se*, electronic notice is not sent because the debtor is not a registered user of the Court's electronic filing system. Therefore, the only information available to a creditor is the address listed by the debtor in the bankruptcy petition or other notice of address filed by the debtor with the Court. The debtor generally does not provide an e-mail address, nor a phone number, so electronic notice to a *pro se* debtor is simply not an option. Notice must therefore be given to the debtor at the address provided by the debtor to the Court.

**Service on the Debtor Satisfied his Due Process Rights**

In this case, the Debtor listed his address at the Riverbend Property. The Creditor mailed the motions and notice of hearing to the Debtor to such address on March 3, 2006, six days prior to the hearing. The motions and notice were mailed at a mailbox at a post office within the same metropolitan area as the Riverbend Property. This service was in compliance with Fed. R. Bankr. P. 7004(b)(9). The Creditor's notice by mail is sufficient under the circumstances and does not violate the Debtor's due process rights.

The Creditor did not simply rely on service by mail, however. The Creditor also employed a special process server to serve a copy of the motions and notice on the Debtor at the Riverbend Property. The process server delivered the motions and notice to the Riverbend Property on March 7, 2006, two days prior to the hearing. This notice likewise satisfied the Debtor's due process rights.

The Debtor argues that the Creditor should have personally served the motions and the notice on him and that anything short of personal service violated his due process rights. This Court disagrees. While personal service would have sufficed to satisfy the Debtor's due process rights; the Debtor's absence made that impossible, moreover, it is not necessary in the bankruptcy context which expressly authorizes service by mail. Fed. R. Bankr. P. 7004(b)(9). Likewise, personal service is not dictated by the applicable Local Rule which merely requires service as expeditiously as possible **under the circumstances**. E.D.Mo.L.B.R.9060-1.C.

Due process requires notice which is reasonable **under the circumstances**. *Mullane*, 339 U.S. at 314. Therefore, this Court must look at the circumstances under

13

which the notice was given.  First and foremost, one must remember that the Debtor created the emergency situation by filing a bankruptcy petition shortly before the Creditor's scheduled foreclosure sale.  At that point, the Creditor had two options: continue the sale for one week and seek relief from this Court to proceed with the sale or re-start the foreclosure process, incurring more fees and expenses.  The Creditor opted for the expedited relief, the speedier and less costly of the two options.

The expedited relief process was not foreign to the Debtor.  This was not the first time he faced a foreclosure sale; nor was this his first bankruptcy filing.  It was his eighth bankruptcy filing.  Ms. Vinson had filed thirteen bankruptcy petitions.  The Debtor and his girlfriend have repeatedly taken advantage of bankruptcy to avoid collection efforts by creditors.  They have also each specifically filed bankruptcy on the eve of a foreclosure sale in an attempt to save a home from foreclosure.  The Debtor created the emergency by filing bankruptcy on the eve of foreclosure.  If this Court had not heard the Creditor's motions on an expedited basis, the Creditor would have had to re-start the foreclosure process at the beginning, incurring additional fees and expenses for which the Debtor would ultimately be liable.  The Debtor's role in creating the emergency must not be overlooked.

The Debtor exacerbated the situation by removing himself from this Court's jurisdiction before and during the time he filed his bankruptcy petition and thereafter. The Debtor lacks credibility when he cries foul for lack of personal service when he caused a bankruptcy case to be filed in his name at a time when he was outside this Court's jurisdiction.  He then continued to avoid this jurisdiction at all times relevant to this matter, rendering personal service impossible.

Had the Debtor disclosed on his bankruptcy petition or schedules that Ms. Vinson had signed his name in an agency or representative capacity, service upon Ms. Vinson could have been effected. But the Debtor's deceit foreclosed such an opportunity—just as the Debtor knew it would. Hit and run tactics may be suited for guerrilla wars but they have no place in bankruptcy court.

The Bankruptcy Code is designed to provide relief to honest debtors. *Cohen v. De La Cruz*, 523 U.S. 213, 217 (1998); *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). It is not designed to be used by tricksters to avoid the payment of legitimate debts. Nonetheless, that is exactly what this Debtor has done. He filed bankruptcy to stop a foreclosure sale – without actually signing a bankruptcy petition nor coming within this Court's jurisdiction – and now he is trying to take advantage of his absence in the name of due process. The Debtor lied in his bankruptcy schedules and statements. He listed himself as the legal owner of the Riverbend Property despite the fact that he had transferred all his rights in the property to Phyllis Barry seventeen months earlier. He also failed to disclose the transfer. This Court will not tolerate the Debtor's games nor allow the Debtor to belittle the Fifth Amendment. The Due Process Clause was designed to protect citizens from undue process of law. It was not designed to permit someone to take advantage of the privilege of bankruptcy while avoiding the natural consequences of a bankruptcy filing.

As the Supreme Court has recognized, the "employment of an indirect and even a probably futile means of notification" may be all that the situation permits. *Mullane*, 339 U.S. at 317. Here the Debtor created a situation where personal service was

impossible. Under the circumstances, service by mail and service to someone other than the Debtor at the Riverbend Property satisfy due process.

## Harmless Error

The Eighth Circuit Court of Appeals noted that it was unable to determine if this Court's denial of the Debtor's Motion was harmless error. This Court believes that it was. This Court could have granted the Creditor relief from the automatic stay on an *ex parte* basis. Federal Rule of Bankruptcy Procedure 4001(a)(2) specifically authorizes *ex parte* relief under certain circumstances. The Creditor did not opt to take advantage of this provision. Instead it undertook all reasonable means under the circumstances of notifying the Debtor of the motions and the hearing thereon. Nonetheless, where the Rules contemplate *ex parte* relief, the Debtor should not complain when the Creditor took the less aggressive approach and provided the maximum notice permitted under the circumstances.

Furthermore, the Debtor admitted that he had no legal ownership in the Riverbend Property at the time he filed his bankruptcy petition, having transferred the property seventeen months earlier. He also admitted he was delinquent in payments to the Creditor. [See Debtor's Motion, p. 2.] A creditor is entitled to relief from the automatic stay for cause, including a lack of adequate protection of the creditor's interest in the property, and where the debtor does not have equity in the property and the property is not necessary for an effective reorganization. Here the Debtor did not own the Riverbend Property. He therefore could not have had any equity in it nor could it have been necessary for an effective reorganization. Therefore relief would have

16

been granted even if the Debtor had been at the hearing because by his own admissions he has no grounds to object to relief from the automatic stay.

This Court opted to dismiss the case rather than merely grant relief from the automatic stay because of the Debtor's bad faith.  In light of the Debtor's false representations regarding ownership of the Riverbend Property and his failure to disclose the transfer thereof in his bankruptcy schedules, dismissal for lack of good faith would have resulted whether or not the Debtor was present.  Accordingly, this Court's denial of the Motion was harmless error.

## CONCLUSION AND ORDER

This Court has carefully reviewed the Motion and considered the evidence presented by the parties.  The Debtor created an emergency situation by filing a bankruptcy petition on the eve of a foreclosure sale to take advantage of the automatic stay.  The Creditor's right to continue collection efforts was dependent on relief from this Court.  The Debtor was aware of the expedited process, having been involved in prior emergency motions for relief from the automatic stay, yet the Debtor remained outside of this Court's jurisdiction at all times relevant to this matter.  The Creditor undertook all reasonable efforts to notify the Debtor of the motions and of the emergency hearing under the circumstances.  The Debtor, on the other hand, filed his case *pro se* and removed himself from the jurisdiction, rendering personal or electronic service impossible.  The Debtor's due process rights were not violated.

Accordingly, the Motion is **DENIED**.

DATED: May 21, 2008

St. Louis, Missouri

/s/ Barry S. Schermer

Barry S. Schermer
Chief United States Bankruptcy Judge

Copy to:

Alvin Leroy Baldwin
#3 River Bend Court
Saint Peters, MO 63376

Cynthia M. Woolverton
Charles S. Pullium
Millsap and Singer, LLC
612 Spirit Drive
St. Louis, MO 63005

John V. LaBarge, Jr
Chapter 13 Trustee
P.O. Box 430908
St. Louis, MO 63143

Office of U.S. Trustee
111 South Tenth Street
Suite 6353
St. Louis, MO 63102

Steven Keith Brown
1221 Locust, Ste. 500
St. Louis, MO 63103